IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. KAREN BANDY

**Appeal from the Criminal Court for Robertson County**
**No. 99-0243B     Robert W. Wedemeyer, Judge**

---

**No. M1999-01870-CCA-R3-CD - Decided May 25, 2000**

---

Defendant, Karen Bandy, appeals the denial of alternative sentencing following her best interest guilty plea to attempted second degree murder, a Class B felony. As part of the plea agreement, the defendant received an eight-year sentence. The manner of service was left to the determination of the trial court. Following a sentencing hearing, the trial court held the defendant's sentence should be served in confinement. Upon a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

RILEY, J. delivered the opinion of the court, in which WADE, P. J. and Ogle, J. joined.

Michael R. Jones, District Public Defender; and Ann M. Smith, Assistant District Public Defender, Springfield, Tennessee, for the appellant, Karen Bandy.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

Defendant was seventeen years old; however, she was married, pregnant with twins and living in a separate residence from her parents. On the morning of October 9, 1998, Lorna Jackson, who was the victim's wife and the defendant's mother, and Kimberly Bidwell discussed in the defendant's presence plans to murder the victim. Later in the day the defendant and Bidwell went to Portland and Gallatin to visit friends. Upon their return, Bidwell informed the defendant she had to "take care of something" she and "Lorna" had discussed earlier. First, they stopped at the defendant's home and Bidwell returned to the car with a gun wrapped in a bundle of clothes. Thereafter, Bidwell drove to the victim's home. While defendant waited in the car, Bidwell entered the residence and fatally shot the victim in the head as he slept. When Bidwell returned to the car,

she informed the defendant she had shot defendant's father. Afterwards, the two drove to a nearby lake and Bidwell disposed of the weapon. At some point defendant was given $100 from the victim's wallet.

Initially, the defendant claimed she was not involved in the shooting and did not know anything about it. However, she later gave a statement in which she told officers she knew what Bidwell was talking about when she stated "I have to take care of something when we get to the house; something to do with your daddy." Although her statement is contradictory, defendant at one point stated that when she and Bidwell started to go to her parents' house, she noticed Bidwell had a gun.

The degree of the defendant's involvement in the homicide was disputed. Pursuant to a plea agreement, defendant entered a best interest guilty plea to attempted second degree murder and received an eight-year sentence. The manner of service was to be determined by the trial court. Following the sentencing hearing, the trial court ordered the defendant to serve her sentence in the Tennessee Department of Correction. Defendant challenges the trial court's ruling, claiming she should have received some form of alternative sentencing.

## STANDARDS OF REVIEW

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also* Ashby, 823 S.W.2d at 169. Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Boggs, 932 S.W.2d 467, 476-77 (Tenn. Crim. App. 1996). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

## ANALYSIS

Defendant argues the trial court erred by not granting some form of alternative sentencing. Defendant recognizes that since she was convicted of a Class B felony, she is not presumed to be a favorable candidate for alternative sentencing. *See* Tenn. Code Ann. §40-35-102(6). However, she claims her involvement in the crime was limited. In addition, she asserts her age, non-existent criminal history and her cooperation in the investigation of her co-defendants weigh in favor of alternative sentencing.

In addition to not being entitled to the presumption for alternative sentencing, defendant is not a proper candidate for community corrections. Since defendant was convicted of a violent felony, she does not meet the general eligibility requirements for the community corrections program. *See* Tenn. Code Ann. §40-36-106(a)(3). There is also no showing that she has special needs for community corrections pursuant to Tenn. Code Ann. § 40-36-106(c). Therefore, the only question remaining is whether defendant should have been granted full probation or split confinement.

A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). The defendant has the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In the instant case, the defendant was sentenced to eight years; thus, she meets the statutory eligibility requirement for probation. In deciding whether or not to grant probation, the trial court recognized the defendant pled guilty to attempted second degree murder, but appropriately looked "behind the plea agreement" and considered the "true nature of the offense committed." State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983); State v. Biggs, 769 S.W.2d 506, 507 (Tenn. 1988). The trial court concluded confinement was necessary both to avoid depreciating the seriousness of the offense and to effectuate meaningful deterrence.

The state concedes there was no proof in the record to support the trial court's conclusion that confinement was necessary for deterrence. In addition, the defendant has no prior criminal history. *See* Tenn. Code Ann. § 40-35-103(1). However, probation may be denied based solely upon the circumstances surrounding the offense. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); Hartley, 818 S.W.2d at 374. When the circumstances of the offense are the sole basis for denial, the circumstances of the offense as committed must be especially violent, horrifying,

-3-

shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. Hartley, 818 S.W.2d at 374-75.

In a statement to authorities following the murder, the defendant admitted that she heard conversations between her co-defendants regarding their plan to kill her father. In addition, at the sentencing hearing the defendant testified that Bidwell told her she had to "take care of something;" something "to do with your daddy." The defendant claimed she knew then that Bidwell was going to shoot the victim. Subsequently, the two women stopped at the defendant's house. At no time did the defendant attempt to dissuade Bidwell from the plan to shoot her father, nor did she attempt to contact the authorities. At one point in her statement to authorities, defendant stated she noticed Bidwell had a gun before entering the victim's home. Again, defendant did nothing to prevent Bidwell from carrying out her plan and accompanied Bidwell to her parents' home. Bidwell went inside and fatally shot the victim in the head as he lay sleeping. After Bidwell returned to the car and informed the defendant she had killed defendant's father, defendant accompanied Bidwell to a nearby lake where Bidwell disposed of the weapon. Furthermore, defendant admits she accepted $100 of the money Bidwell took from the victim.

In addition, the defendant's lack of credibility is an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). The defendant initially gave a statement to the police in which she denied any personal involvement in or knowledge of the murder. In her subsequent statement to police, she stated that she "didn't know for sure" Bidwell was going to shoot the victim. Defendant also gave inconsistent statements as to whether she saw the gun before Bidwell entered the victim's residence. At the sentencing hearing she stated that she knew Bidwell "was going to go in there and shoot [her] dad." She did not concede that she saw the gun before Bidwell entered the victim's home. The trial court was free to consider the defendant's credibility in determining defendant's potential for rehabilitation.


## CONCLUSION


Considering the lack of a presumption of alternative sentencing; the true nature of the offense being a violent murder; the defendant's credibility; and the defendant's burden to establish her sentence as improper; we can only conclude the trial court did not err in denying alternative sentencing. Thus, the judgment of the trial court is AFFIRMED.